John J. Janis [ISB No. 3599]
HEPWORTH HOLZER, LLP
537 W. Bannock Street, Ste. 200
P.O. Box 2582
Boise, Idaho 83701-2582
Telephone: (208) 343-7510
Fax No. (208) 342-2927
Email: jjanis@HepworthHolzer.com

Timothy J. MacFall [NYB No. 2027191]
Samir Aougab [MD Atty No. 2301120005]
RIGRODSKY LAW, P.A.
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683.3516
Facsimile: (302) 654-7530
Email: tjm@rl-legal.com
Email: sa@rl-legal.com
Pro Hac Vice Forthcoming

Joshua H. Grabar
GRABAR LAW OFFICES
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel:  267-507-6085
Email: jgrabar@grabarlaw.com
Pro Hac Vice Forthcoming

Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT
### DISTRICT OF IDAHO

| | | |
|---|---|---|
| PORTIA MCCOLLUM, Derivatively on Behalf of Nominal Defendant LAMB WESTON HOLDINGS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:24-cv-00345 |
| v. | ) ) ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| THOMAS P. WERNER, BERNADETTE M. MADARIETA, PETER J. BENSEN, CHARLES A. BLIXT, ROBERT J. COVIELLO, RITA FISHER, ANDRE J. | ) ) ) ) ) | |

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

HAWAUX, W. G. JURGENSEN, THOMAS    )
P. MAURER, HALA G. MODDELMOG,    )
ROBERT A. NIBLOCK, and MARIA    )
RENNA SHARPE,    )
                                                      )
            Defendants,    )
                                                     )
   and    )
                                                     )
LAMB WESTON HOLDINGS, INC.,    )
                                                     )
            Nominal Defendant.    )

## **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff Portia McCollum ("Plaintiff"), by and through her undersigned attorneys, brings this verified stockholder derivative action on behalf of nominal defendant Lamb Weston Holdings, Inc. ("Lamb Weston" or the "Company"), against certain of the Company's executive officers and its Board of Directors (the "Board") for breaches of fiduciary duties and violations of federal law by the Individual Defendants (defined below). Plaintiff's allegations are based on personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, based on, *inter alia*, the investigation conducted by his counsel, including review of publicly available information regarding the Company; the allegations of a class action complaint filed in the Securities Class Action captioned *Cleveland Bakers and Teamsters Pension Fund v. Lamb Weston Holdings Inc., et al.,* Case No. 1:24-cv-00282-CWD (D. Idaho June 13, 2024); (the "Securities Class Action"); conference call transcripts and announcements; filings with the United States Securities and Exchange Commission (the "SEC"); press releases disseminated by Lamb Weston; legal filings; news reports; and securities analysts' reports about the Company.

## **NATURE OF THE ACTION**

1.     This shareholder derivative action is brought on behalf of Lamb Weston against

certain officers and members of the Company's Board for breaches of their fiduciary duties between at least July 25, 2023 and April 3, 2024, inclusive (the "Relevant Period"), and for violations of the federal securities laws arising from materially false and misleading statements issued, or caused to be issued, by the Individual Defendants in the Company's SEC filings and other public statements. The Individual Defendants' wrongdoing has exposed the Company to massive potential liability to the class, as well as the significant defense costs in the Securities Class Action, as set forth below.

2.      Lamb Weston is a Delaware Corporation based in Idaho that produces frozen potato products for sale to restaurants and retailers around the world. One of its largest customers is the fast-food chain, McDonald's.

3.      On July 25, 2023, Lamb Weston announced that it had designed a new Enterprise Resource Planning ("ERP") software system that would integrate the most critical aspects of the Company's operations and replace its existing outdated operating and financial systems. The new system was designed to manage supplier payments, inventories, warehousing, customer invoicing, and order shipments.

4.      The Company's development of a new ERP system was a part of its Win-as-One initiative to deliver improved data systems that purportedly would enhance productivity and cost savings and streamline operational execution. In late November 2023, the Company transitioned several of its core systems to its new ERP platform.

5.      Throughout the Relevant Period, certain of Lamb Weston's executives and members of its Board issued materially false and misleading statements touting the purported benefits of its new ERP system to the Company's productivity and operational efficiency.

6.      On April 4, 2024, the truth was revealed when the Company disclosed serious

issues with the implementation of its new ERP system. The system failed to function properly, causing the Company to lose $235 million in sales during its fiscal quarter ended February 25, 2024, and to significantly reduce its financial guidance for the full fiscal year.

7.     As a result of the foregoing, the Securities Class Action was filed against Lamb Weston and certain of its executive officers, exposing the Company to massive class-wide liability.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 14(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and Rule 14a-9 (17 C.F.R.§240.14a-9) promulgated thereunder by the SEC.

9.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

10.    This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

11.    In connection with the acts, conduct and other wrongs complained of herein, the Individual Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

12.    Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. §1391(b)(1), as Lamb Weston maintains its principal executive offices in this District and a substantial portion of the acts and omissions alleged herein, including the issuance and dissemination of materially false and misleading information, occurred in this District.

## PARTIES

*Plaintiff*

13.     Plaintiff is, and has been at all relevant times, a shareholder of Lamb Weston.

***Nominal Defendant***

14.     Nominal Defendant Lamb Weston is incorporated under the laws of the State of Delaware.

15.     The Company's principal executive offices are located at 599 South Rivershore Lane, Eagle, Idaho 83616. Lamb Weston's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "LW."

***Individual Defendants***

16.     Defendant Thomas P. Werner ("Werner") has served as President, Chief Executive Officer ("CEO"), and as a member of the Board since November 2016. According to the Company's public filings, Defendant Werner received $20,352,276 during the fiscal year ended May 28, 2023 in compensation from the Company. As of July 31, 2023, Defendant Werner beneficially owned 606,526 shares of Lamb Weston common stock,[1] worth $64,673,867.[2]

17.     Defendant Peter J. Bensen ("Bensen") has served as a member of the Board since December 2017 and serves as a member of the Audit and Finance Committee. According to the Company's public filings, Defendant Bensen received $254,953 during the fiscal year ended May 28, 2023 in compensation from the Company. As of July 31, 2023, Defendant Bensen beneficially owned 22,856 shares of Lamb Weston common stock, worth $2,437,135.

18.     Defendant Charles A. Blixt ("Blixt") has served as a member of the Board since

---

[1] Holdings of common stock include restricted stock units and performance shares for which the applicable performance conditions have been satisfied but remain subject to the Individual Defendant's continued service through the vesting date and deferred stock units held in the Lamb Weston Directors' Deferred Compensation Plan and Voluntary Deferred Compensation Plan.

[2] Valuations of the Individual Defendants' personal holdings of Company stock are calculated based on the $106.63 per share closing price of Lamb Weston common stock on July 31, 2023.

November 2016. According to the Company's public filings, Defendant Blixt received $269,953 during the fiscal year ended May 28, 2023 in compensation from the Company. As of July 31, 2023, Defendant Blixt beneficially owned 16,949 shares of Lamb Weston common stock, worth $1,807,272.

19.     Defendant Robert J. Coviello ("Coviello") has served as a member of the Board since March 2020 and serves as a member of the Audit and Finance Committee. According to the Company's public filings, Defendant Coviello received $254,953 during the fiscal year ended May 28, 2023 in compensation from the Company. As of July 31, 2023, Defendant Coviello beneficially owned 8,620 shares of Lamb Weston common stock, worth $919,151.

20.     Defendant Rita Fisher ("Fisher") has served as a member of the Board since July 2023 and serves as a member of the Audit and Finance Committee. As of July 31, 2023, Defendant Fisher beneficially owned 379 shares of Lamb Weston common stock, worth $40,413.

21.     Defendant Andre J. Hawaux ("Hawaux") has served as a member of the Board since July 2017 and serves as a member of the Audit and Finance Committee. According to the Company's public filings, Defendant Hawaux received $254,953 during the fiscal year ended May 28, 2023 in compensation from the Company. As of July 31, 2023, Defendant Hawaux beneficially owned 44,803 shares of Lamb Weston common stock, worth $4,777,344.

22.     Defendant W.G. Jurgensen ("Jurgensen") has served as a member of the Board since November 2016 and as its Chairman since 2017. According to the Company's public filings, Defendant Jurgensen received $458,931 during the fiscal year ended May 28, 2023 in compensation from the Company. As of July 31, 2023, Defendant Jurgensen beneficially owned 162,761 shares of Lamb Weston common stock, worth $17,355,205.

23.     Defendant Thomas P. Maurer ("Maurer") has served as a member of the Board

since November 2016 and serves as Chair of the Audit and Finance Committee. According to the Company's public filings, Defendant Maurer received $279,953 during the fiscal year ended May 28, 2023 in compensation from the Company. As of July 31, 2023, Defendant Maurer beneficially owned 24,423 shares of Lamb Weston common stock, worth $2,604,224.

24.     Defendant Hala G. Moddelmog ("Moddelmog") has served as a member of the Board since July 2017. According to the Company's public filings, Defendant Moddelmog received $254,953 during the fiscal year ended May 28, 2023 in compensation from the Company. As of July 31, 2023, Defendant Moddelmog beneficially owned 14,074 shares of Lamb Weston common stock, worth $1,500,711.

25.     Defendant Robert A. Niblock ("Niblock") has served as a member of the Board since March 2020. According to the Company's public filings, Defendant Niblock received $254,953 during the fiscal year ended May 28, 2023 in compensation from the Company. As of July 31, 2023, Defendant Niblock beneficially owned 13,627 shares of Lamb Weston common stock, worth $1,453,047.

26.     Defendant Maria Renna Sharpe ("Sharpe") has served as a member of the Board since November 2016. According to the Company's public filings, Defendant Sharpe received $274,953 during the fiscal year ended May 28, 2023 in compensation from the Company. As of July 31, 2023, Defendant Sharpe beneficially owned 16,730 shares of Lamb Weston common stock, worth $1,783,920.

***Officer Defendant***

27.     Defendant Bernadette M. Madarieta ("Madarieta") has served as the Company's Chief Financial Officer ("CFO") since August 2021. According to the Company's public filings, Defendant Madarieta received $5,219,091 during the fiscal year ended May 28, 2023 in

compensation from the Company. As of July 31, 2023, Defendant Madarieta beneficially owned 42,246 shares of Lamb Weston common stock, worth $4,504,691.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

28.    Because of their positions as officers and/or directors of Lamb Weston, and their ability to control the business and corporate affairs of the Company, the Individual Defendants owed Lamb Weston and its shareholders fiduciary obligations of good faith, loyalty, trust, and candor and were required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner at all relevant times.

29.    Therefore, the Individual Defendants were required to act in furtherance of the best interests of Lamb Weston and its shareholders.

30.    Each director and officer of the Company owes to Lamb Weston and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

31.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Lamb Weston, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

32.    Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of trust, loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Lamb Weston, the absence of good

faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

33.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, earnings, internal controls, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's predatory sales practices, and the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

34.     To discharge their duties, the officers and directors of Lamb Weston were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Lamb Weston were required to, among other things:

(a)     Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Lamb Weston's own Code of Conduct;

(b)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion;

(d)     Remain informed as to how Lamb Weston conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(e)     Establish and maintain systematic and accurate records and reports of the business and internal affairs of Lamb Weston and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(f)     Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Lamb Weston's operations would comply with all applicable laws and Lamb Weston's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(g)     Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(h)     Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above; and

(i)     When put on notice of problems with the Company's business practices, operations, or internal controls, exercise good faith in taking appropriate action to correct the

misconduct and prevent its recurrence.

35.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Lamb Weston.

36.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Lamb Weston and were at all times acting within the course and scope of such agency.

37.     Each of the Individual Defendants breached his or her fiduciary duties as alleged herein, both individually and in concert with the other Defendants.

### **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

38.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

39.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

40.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company, purposefully, recklessly, or negligently, to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

41.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.  Because the actions

described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of Lamb Weston, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

42.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

43.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Lamb Weston and at all times acted within the course and scope of such agency.

## LAMB WESTON'S CODE OF CONDUCT

44.     Lamb Weston's Code of Conduct begins with a message from Defendant Werner, which states, in pertinent part:

> Since 1950 Lamb Weston employees have built a business based on integrity, holding ourselves and our partners to high standards of conduct. Our customers and consumers around the world put their trust in us each time they serve or eat our products. Building and maintaining that trust is an incredible responsibility, and it is one that each of us impacts every single day.
>
> Our expectations for acting with integrity have not changed over the years; in fact we've only become more resolute in our commitment. We do the right things the right way, every time, with safety and excellence.

45.     The Code of Conduct applies to "[m]embers of the board of directors of Lamb Weston Holdings, Inc., as well as the employees of Lamb Weston Holdings, Inc. and our majority owned subsidiaries worldwide. The Code also applies to contractors (whether or not contracted

through an agency or whether full or part-time), trainees, interns and volunteers.

46.     Violations of the Code of Conduct will lead to "[a]ppropriate disciplinary action, which could include, when applicable, ineligibility for future participation in Lamb Weston's equity stock option and other incentive plans, recoupment of equity or other incentive awards, or termination of employment . . . Discipline may also extend to those responsible for the failure to prevent, detect or report a known violation."

47.     In a section titled "Values," the Code of Conduct states "Integrity is the foundation for everything we do. This means always doing right by our people, our communities and our planet, regardless of the circumstances or pressures we face, and whether or not anyone is watching."

48.     In a subsection titled "Business transactions and maintaining proper records," the Code of Conduct states:

> The accurate recording of financial information is critical to investors and our business and required by law. We expect you to conduct yourself with the highest standard of ethical behavior and to document and record your transactions accurately.

> While some of you have specific responsibilities for accounting for business transactions and preparing accurate financial statements, this responsibility extends to each and every one of you. Each of you must ensure that business transactions are properly reflected in the company's books and records and that all transactions are documented in a manner consistent with their economic substance and in accordance with applicable laws on retention of documents and files. Our commitment to the long-term success of Lamb Weston is too important to sacrifice our reputation by resorting to unacceptable accounting practices. These requirements apply to all records, whether on paper, in company systems or in any form.

49.     In a subsection titled "Proper use of company assets," the Code of Conduct discusses the "responsibility to protect [Company] assets against loss, theft and misuse."

50.     In a subsection titled "Compliance with laws," the Code of Conduct states:

Lamb Weston has a longstanding policy of compliance with all applicable laws and regulations. Lamb Weston also emphasizes the moral and ethical conduct of business in all of its operations.

You must comply with the laws applicable to the jurisdictions in which you are doing business. There may be uncertainty with respect to the scope and application of all relevant laws in every jurisdiction. Compliance requires a good faith effort to satisfy the intent and purpose of applicable laws, consistent with our policy of ethical and honest business dealings.

51.     The Company further maintains a Code of Ethics for Senior Corporate Financial Officers which includes additional requirements and is applicable to the Company's CEO, CFO and Controller (the "senior corporate officers"). Pursuant to the Code of Ethics for Senior Corporate Financial Officers, Defendants Werner and Madarieta are required to provide "full, fair, accurate, timely and understandable disclosure in reports and documents that Lamb Weston files with, or submits to, the Securities and Exchange Commission and in other public communications made by Lamb Weston."

## LAMB WESTON'S AUDIT AND FINANCE COMMITTEE CHARTER

52.     According to the Audit and Finance Committee Charter (the "Audit Committee Charter"), the purpose of the Audit and Finance Committee (the "Audit Committee") is to:

(a) assist the Board in fulfilling its oversight responsibilities by reviewing (1) the integrity of the financial statements and financial reporting processes of the Company, (2) the qualifications, independence and performance of the Company's independent auditor and internal auditing department, and (3) the compliance by the Company with legal and regulatory requirements and the Company's codes of conducts and ethics programs; and (b) prepare the Committee's report to be included in the Company's annual proxy statement (the "Audit Committee Report").

53.     In a section titled "**Oversight of Matters Required in Annual Report and Proxy Statement**," the Audit Committee Charter states:

The Committee shall meet to review and discuss the annual audited financial statements, including reviewing the specific disclosures made in management's discussion and analysis, with management and the independent auditor.

* * *

The Committee shall prepare the Audit Committee Report required by the rules of the SEC to be included in the Company's annual proxy statement.

54.     In a section titled "**Internal Audit Oversight**," the Audit Committee Charter states that the Audit Committee shall "ensure that the Company maintains an internal audit function and shall periodically review and approve the Internal Audit Charter" and "review the effectiveness of the internal audit function, including conformance with appropriate professional standards."

55.     In a section titled "**Additional Committee Action**," the Audit Committee Charter states:

- The Committee shall discuss with management and approve the Company's earnings press releases, including the use of any non-GAAP information, as well as financial information and earnings guidance provided to analysts and rating agencies. Such discussion may be done generally (consisting of discussing the types of information to be disclosed and the types of presentations to be made).
- The Committee shall meet to review, discuss and approve the Company's quarterly financial statements, including reviewing the specific disclosures made in management's discussion and analysis, with management and the independent auditor.
- The Committee shall discuss with management its process for performing its required quarterly certifications under Section 302 and Section 906 of the Sarbanes-Oxley Act, including the evaluation of the effectiveness of disclosure controls by the Company's Chief Executive Officer and Chief Financial Officer and disclosures made by such officers during their certification process about any significant deficiencies in the design or operation of internal controls or material weaknesses therein and any fraud involving management or other employees who have a significant role in the Company's internal controls.
- The Committee shall discuss, with management and the internal auditors, management's process for assessing the effectiveness of internal control over financial reporting under Section 404 of the Sarbanes-Oxley Act, including any material weaknesses or significant deficiencies identified.
- The Committee shall discuss with management, the internal auditors and the independent auditor (1) any changes in internal control over financial reporting that have materially affected or are reasonably likely to materially affect the Company's internal control over financial reporting that are required to be disclosed and (2) any other changes in internal control over financial reporting that were considered for disclosure in the Company's periodic filings with the SEC.

56.     In a section titled "**Reports to the Audit Committee**," the Audit Committee Charter states:

> The Committee shall discuss and review the Company's policies on risk assessment and risk management and review reports from management with respect to significant enterprise-wide risks facing the Company, including, but not limited to financial risks (such as derivative and treasury risks) and operational risks. The Committee shall ensure that at least annually, a report on such risks is provided to the full Board.

## SUBSTANTIVE ALLEGATIONS

### Background

57.     In July 2023, Lamb Weston announced that it had designed a new ERP software system that would integrate the most critical aspects of the Company's operations and replace its existing outdated operating and financial systems. The new system was designed to manage supplier payments, inventories, warehousing, customer invoicing, and order shipments.

58.     The Company's development of a new ERP system was a part of its Win-as-One initiative to deliver improved data systems that purportedly would enhance productivity and cost savings and streamline operational execution. In late November 2023, the Company transitioned several of its core systems to its new ERP platform.

### The Individual Defendants' False and Misleading Statements

59.     On July 25, 2023, Lamb Weston issued a press release announcing financial results for its fiscal quarter and year ended May 28, 2023 (the "July 25, 2023 Press Release"). The July 25, 2023 Press Release touted the Company's "capital investments to upgrade its information systems and ERP infrastructure" and reported financial guidance for the following year. The July 25, 2023 Press Release forecasted yearly revenues in the range of $6.7 billion to $6.9 billion, net income in the range of $725 million to $790 million, and adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") in the range of $1.45 billion to $1.525 billion.

60.     The same day, during a related earnings call, Defendant Werner stated that "[w]e continued to strengthen our operational infrastructure by completing the design work for the next phase of our new enterprise resource planning system" and "[w]e'll begin implementing this new system across a portion of our supply chain in North America later this year." During the call, Defendant Madarieta repeated the financial guidance regarding the Company's net sales that was reported in the July 25, 2023 Press Release.

61.     Also on July 25, 2023, the Company filed an annual report on Form 10-K with the SEC for its fiscal year ended May 28, 2023 (the "2023 Annual Report"), signed by Defendants Werner, Madarieta, Bensen, Blixt, Coviello, Fisher, Hawaux, Jurgensen, Maurer, Moddelmog, Niblock, and Sharpe. The 2023 Annual Report represented as merely hypothetical a risk that had already materialized, stating that "[p]roblems with the transition, design, or implementation of our new ERP system could interfere with [its] business and operations and adversely affect our financial condition." The Annual Report further stated that the Company "may continue to experience[] difficulties as we transition to new upgraded systems and business processes" and "[a]ny disruptions, delays, or deficiencies in the transition, design, and implementation of a new ERP system . . . could have a material adverse effect on our business, financial condition, and results of operations." As was subsequently disclosed, however, at the time these warnings were issued, Lamb Weston was experiencing problems with the implementation of its ERP system which was then adversely impacting the Company's ability to fill customer orders, causing shipping delays and cancelled orders.

62.     On August 8, 2023, the Company filed a Proxy Statement on Form DEF 14A (the "2023 Proxy"), soliciting shareholder approval for, *inter alia*, the re-election of Defendants Bensen, Blixt, Coviello, Fisher, Hawaux, Jurgensen, Maurer, Moddelmog, Niblock, Sharpe, and

Werner to serve for another one-year term on the Company's Board and a non-binding shareholder vote on the compensation of certain of the Company's executive officers including Defendants Werner and Madarieta. Significantly, the 2023 Proxy stated that the Audit Committee "receives regular updates on the design and implementation of our new enterprise resource planning system."

63.     The 2023 Proxy touted "[k]ey investments in fiscal 2023," including "[u]pdating our information technology infrastructure, including a new enterprise resource planning system."

64.     The 2023 Proxy stated:

> ***Fiscal 2023 was an extraordinarily transformative year for the Company.*** We increased our ownership interest in an Argentina joint venture from 50% to 90%, completed the acquisition of the remaining ownership interest in our European joint venture and announced a new capital expansion project in Argentina, while also continuing significant expansion projects in China and the United States ***and designing a new enterprise resource planning system.***

65.     The 2023 Proxy, however, failed to disclose any information concerning the on-going problems with implementation of the ERP system, or the adverse effects of those problems on Lamb Weston's operations.

66.     On October 5, 2023, the Company issued a press release announcing financial results for its fiscal quarter ended August 27, 2023 (the "October 5, 2023 Press Release"). The October 5, 2023 Press Release highlighted Lamb Weston's "increased investments to upgrade the Company's information systems and ERP infrastructure" and raised the Company's financial guidance for its fiscal year 2024, projecting net sales in the range of $6.8 billion to $7 billion, net income in the range of $800 million to $870 million, and EBITDA in the range of $1.54 billion to $1.62 billion.

67.     In a press release issued on October 11, 2023 in connection with the Company's upcoming investor day, Lamb Weston touted its "Continued Strong Execution of Strategic Growth

Initiatives," which included the implementation of its ERP system, and repeated the financial guidance that was reported in the October 5, 2023 Press Release.

68.     That same day, during the Company's Investor Day conference, Defendant Werner stated that "[w]e are continuing to execute our strategies through our investments in business growth," including "our ERP and IT system upgrades." During the Investor Day conference, Defendant Madarieta represented that the Company had "multiple strategic levers to pull to drive margin improvement," including its "supply chain productivity initiatives" and the enhancement of its global manufacturing network, "which will be aided by a global ERP system once it's fully implemented."

69.     On January 4, 2024, the Company held an earnings call to discuss financial results for its fiscal quarter ended November 26, 2023. During the call, Defendant Madarieta represented that the Company had merely experienced the "usual bumps" in the implementation of its ERP system and claimed that the Individual Defendants "[do not] expect that the cutover will have a material impact on our full year business or operating results." Defendant Madarieta stated that "[t]he estimated financial impact of the system's go live is included in our fiscal 2024 targets," including "reduced shipments due to short-term inventory visibility challenges at our third-party finished goods warehouses." Defendant Madarieta additionally reiterated the Company's reported sales and adjusted EBITDA guidance for its fiscal year 2024.

70.     During the earnings call, Defendant Madarieta further stated that, after implementation of the ERP system, investors and the public could expect "positive year-over-year [sales] volume growth in our fiscal fourth quarter." When asked about the impact of the implementation of the Company's ERP system on its third quarter sales, Defendant Madarieta stated that sales volumes were "tempered in terms of [ ] any increase as it relates to volume in the

third quarter, but definitely positive in the fourth quarter as we had originally projected."

71.     The statements identified above in ¶¶ 59-69 were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) the Company was experiencing serious issues with the implementation of its ERP system; (ii) despite the fact that it was not ready to go live, the Company pushed ahead with the premature implementation of an ERP system likely to be defective; (iii) as a result of the foregoing, the Individual Defendants' statements concerning its business, operations, and prospects were materially misleading and lacked a reasonable basis at all relevant times.

***The Truth Emerges***

72.     On April 4, 2024, the Company reported financial results for its fiscal quarter ended February 25, 2024 and disclosed serious issues with the implementation of its ERP system. The system was defective, causing Lamb Weston to lose over $130 million in sales during the quarter and to reduce its sales guidance for the full fiscal year by $330 million.

73.     The unsuccessful implementation of the Company's ERP system resulted in "reduced visibility into finished goods inventories at [] distribution centers," which adversely impacted Lamb Weston's ability to fulfill customer orders, leading to shipment delays and cancelled orders. The Company reported that the defective ERP system caused Lamb Weston to lose $135 million in net sales, $72 million in net income, and $95 million in adjusted EBITDA. For the fiscal quarter ended February 25, 2024, Lamb Weston further reported a 17% decline in sales volumes in North America year-over-year, more than half of which attributable to the failed implementation of the ERP system.

74.     The Company further reduced its financial guidance for its fiscal year 2024, including a $330 million reduction to its sales projections. Lamb Weston disclosed that it expected

to lose customers to competitors over the following fiscal quarter, as many of its customers were adversely impacted by the failed implementation of the Company's ERP system.

75.     On this news, the price of Lamb Weston stock declined by 19.4% in one day, closing at $81.53 per share on April 4, 2024.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

76.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the Individual Defendants' breaches of fiduciary duties and other violations of law.

77.     Lamb Weston is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

78.     Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

79.     Plaintiff is an owner of Lamb Weston stock and has been a continuous holder of the Company's common shares at all relevant times.

80.     At the time this action was commenced, the eleven-member Board was comprised of Defendants Bensen, Blixt, Coviello, Fisher, Hawaux, Jurgensen, Maurer, Moddelmog, Niblock, Sharpe, and Werner. Accordingly, Plaintiff is only required to show that six directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have

been a futile act.

81.     The Individual Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Individual Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Individual Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized, and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Individual Defendants could not fairly and fully prosecute such a suit even if they instituted it.

82.     The Individual Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Individual Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Individual Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

83.     As members of the Board charged with overseeing the Company's affairs, each of the Individual Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Lamb Weston, the Individual Defendants knew, or should have known, the material facts surrounding the implementation of the Company's ERP system.

84.     Defendant Werner is not disinterested or independent, and therefore, is incapable of considering a demand because he is named as a defendant, and faces significant personal liability, in the Securities Class Action based on substantially the same wrongdoing as alleged

COMPLAINT AND DEMAND FOR JURY TRIAL - 22

herein, specifically issuing materially false and misleading statements during the Relevant Period.

85.    Defendants Bensen, Coviello, Fisher, Hawaux and Maurer serve as members of the Audit Committee and, pursuant to the Charter, were specifically charged with the responsibility of assisting the Board in fulfilling its oversight responsibilities related to internal controls over financial reporting and public disclosure requirements. Throughout the Relevant Period, however, these Defendants breached their fiduciary duties to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices and the adequacy of the Company's internal controls as alleged above. Therefore, Defendants Bensen, Coviello, Fisher, Hawaux and Maurer cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihood.

86.    Additionally, each of the directors received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company. Indeed, all of the Individual Defendants benefitted directly from the wrongdoing alleged herein. Specifically, the Individual Defendants benefitted from the artificial inflation of the price of the Company's stock and the resulting increase in the value of Lamb Weston stock and stock options they held.

87.    The Individual Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Individual Defendants to also adhere to Lamb Weston's standards of business conduct. The Individual Defendants violated the Code of Conduct because they knowingly or recklessly engaged in and participated in making and/or causing the Company to make the materially false and misleading statements alleged herein.

Because the Individual Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

88.    Furthermore, demand in this case is excused because each of the directors derive substantial revenue from the Company, control the company, and are indebted to each other. These conflicts of interest have precluded the current directors from adequately monitoring the Company's operations and internal controls and calling into question the other Individual Defendants' conduct. Significantly, none of the Individual Defendants have taken remedial action to redress the conduct alleged herein. For instance, none of the Individual Defendants have sought to enforce Lamb Weston's Clawback Policy, which requires "excess amounts paid to any of our executive officers under our incentive compensation programs to be recovered in the event of a material restatement of our financial statements for fiscal 2018 or later fiscal years, or the occurrence of a detrimental activity (as defined in the policy), in each case, due to the officer's fraud or dishonesty."

89.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

90.    The acts complained of herein constitute violations of fiduciary duties owed by Lamb Weston's officers and directors, and these acts are incapable of ratification.

COMPLAINT AND DEMAND FOR JURY TRIAL - 24

91.     The Individual Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Lamb Weston. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Individual Defendants were to sue themselves or certain officers of Lamb Weston, there would be no directors' and officers' insurance protection. Accordingly, the Individual Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Individual Defendants is futile and, therefore, excused.

92.     If there is no directors' and officers' liability insurance, then the Individual Defendants will not cause Lamb Weston to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

93.     Accordingly, for all of the reasons set forth above, all of the current directors cannot consider a demand with disinterestedness and independence. Consequently, a pre-suit demand on the Board is futile and excused.

## COUNT I

### Against the Individual Defendants for Violations of § 14(a)
### of the Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9 (17 C.F.R.§240.14a-9)

94.     Plaintiff incorporates by reference and realleges each and every allegation

contained above, as though fully set forth herein.

95.     The Individual Defendants violated § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder by the SEC.

96.     The Individual Defendants, individually and in concert, disseminated and/or permitted the dissemination of materially false and misleading statements in the 2023 Proxy filed with the SEC. As alleged above, this filing contained materially false and misleading statements concerning the implementation of the Company's ERP system.

97.     The 2023 Proxy was used to solicit shareholder votes in connection with the election of Defendants Bensen, Blixt, Coviello, Fisher, Hawaux, Jurgensen, Maurer, Moddelmog, Niblock, Sharpe, and Werner to serve for another one-year term on the Company's Board. In addition, the 2023 Proxy was used to solicit the advisory vote to approve the compensation of, *inter alia*, Defendants Werner and Madarieta. While the shareholder vote was non-binding, the 2023 Proxy indicated that "the Board and Compensation Committee value our stockholders' opinions and expect to consider the outcome of the vote, along with other relevant factors, when considering [executive] compensation in the future."

98.     Describing the Company's "executive compensation practices," the 2023 Proxy indicated that compensation is performance-based, stating that the Company "pay[s] incentive compensation to [its executives] only after our financial results are complete and the Compensation Committee has certified our performance results."

99.     The materially false and misleading statements contained in the 2023 Proxy regarding the Company's customer base therefore misleadingly induced shareholders to vote in favor of the election of Defendants Bensen, Blixt, Coviello, Fisher, Hawaux, Jurgensen, Maurer, Moddelmog, Niblock, Sharpe, and Werner and performance-based compensation to Defendants

Werner and Madarieta, to which they were not entitled.

100.    The payment of unwarranted performance-based compensation to these Company executives was a waste of corporate assets.

## COUNT II

### Against the Individual Defendants for
### Breach of Fiduciary Duties

101.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

102.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

103.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

104.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting materially false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

105.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their

fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate

image and goodwill. Such damage includes, among other things, costs incurred in defending itself

in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide

damages in the Securities Class Action, and damage to the share price of the Company's stock,

resulting in an increased cost of capital, and reputational harm.

106.     Plaintiff, on behalf of Lamb Weston, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Aiding and
### Abetting Breach of Fiduciary Duty

107.     Plaintiff incorporates by reference and realleges each and every allegation

contained above, as though fully set forth herein.

108.     By encouraging and accomplishing the illegal and improper actions alleged herein

and concealing them from the public, the Individual Defendants have each encouraged, facilitated,

and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have

each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties,

waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained

of herein.

109.     Plaintiff, on behalf of Lamb Weston, has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for
### Unjust Enrichment

110.     Plaintiff incorporates by reference and realleges each and every allegation

contained above, as though fully set forth herein.

111.     By their wrongful acts and omissions, the Individual Defendants were unjustly

enriched at the expense of and to the detriment of Lamb Weston.

112.    The Individual Defendants were unjustly enriched by their receipt of bonuses, stock options, or similar compensation from Lamb Weston that was tied to their performance or to the artificially inflated valuation of Lamb Weston.

113.    Plaintiff, as a stockholder and representative of the Company, seeks restitution from the Individual Defendants, and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants as a result of their wrongful conduct and fiduciary breaches.

114.    As a direct and proximate result of the Individual Defendants' misconduct, the Company has suffered significant damages, as alleged herein.

115.    Plaintiff, on behalf of Lamb Weston, has no adequate remedy at law.

<u>**COUNT V**</u>

**Against the Individual Defendants**
**for Waste of Corporate Assets**

116.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

117.    The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of Lamb Weston's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

118.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, among other things, incurring and paying defense costs in connection with the Securities Class Action, and approving performance-based compensation linked to the Company's

perceived successes.

119.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

120.    Plaintiff on behalf Lamb Weston has no adequate remedy at law.

## NOTICE OF INTENT TO INCLUDE CLAIM FOR PUNITIVE DAMAGES

The Plaintiff hereby gives notice of intent to seek leave from the Court to Amend the Complaint to include a claim for punitive damages, consistent with Idaho Code § 6-1604.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this matter on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.    Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

D.    Granting such other and further relief as the Court deems just and proper.

Dated: August 1, 2024

**OF COUNSEL:**

**RIGRODSKY LAW, P.A.**
Timothy J. MacFall
Samir Aougab
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683.3516
Facsimile: (302) 654-7530
Email: tjm@rl-legal.com
Email: sa@rl-legal.com


**GRABAR LAW OFFICES**
Joshua H. Grabar
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel:  267-507-6085
Email: jgrabar@grabarlaw.com

**LOCAL COUNSEL**

By: *John J. Janis*
       John J. Janis

**HEPWORTH HOLZER, LLP**
537 W. Bannock St.
P.O. Box 2585
Boise, ID 83701-2582
Telephone: (208) 343-7510
Facsimile: (208) 342-2927
Email: jjanis@hepworthholzer.com

*Attorneys for Plaintiff*

COMPLAINT AND DEMAND FOR JURY TRIAL - 31